UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/2024

-------------------------------------------------------------------- X
                                      :

JAMAL ADAMSON,                        :
                                        :
                      Movant,     :           1:24-cv-5235-GHW
                                        :           1:19-cr-702-1-GHW

           -against-                  :
                                        :

UNITED STATES OF AMERICA,       :           <u>MEMORANDUM</u>
                                        :           <u>OPINION & ORDER</u>
                          Respondent.   :
                                          :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

         In an outburst of gang violence, Jamal Adamson murdered David Moore. Mr. Adamson was 17 years old when he committed the crime. He continued to commit crimes as a member of his gang for years after he turned 18. More than nine years after Mr. Moore's murder, Mr. Adamson was indicted in this Court for murder in aid of a racketeering enterprise. Mr. Adamson had two court appointed attorneys. They filed a motion to dismiss the indictment against him as part of their active defense. One novel argument that they advanced was that the decade Mr. Adamson spent living with the anxiety that he might be prosecuted for murder was akin to cruel and unusual punishment, and that his prosecution should therefore be prohibited by the Eighth Amendment of the United States Constitution. The Court denied Mr. Adamson's motion to dismiss the indictment.

         After lengthy pre-trial proceedings, Mr. Adamson ultimately accepted a plea deal from the Government. In his plea, Mr. Adamson accepted responsibility for his offense, and agreed not to contest the Government's contention that he had shot and killed Mr. Moore. Among other conditions of his plea, Mr. Adamson waived his right to appeal a sentence at or below 300 months

imprisonment.  He was sentenced by the Court to 300 months imprisonment—a sentence that was later upheld on appeal.

In this petition, Mr. Adamson now challenges his conviction and sentence, arguing that his counsel was ineffective.  Because Mr. Adamson's contentions are wholly conclusory and belied by his sworn statements during his guilty plea colloquy, Mr. Adamson's petition must be denied.

## II.   BACKGROUND

### A.   The Defendant Murdered David Moore

Mr. Adamson was a member of a street gang—the "Cash Money Boys."  Sentencing Transcript, Dkt. No. 144 ("Sentencing Tr.") at 26:22.  As evidenced by its name, the gang's primary goal was to enrich its members through drug sales and robberies.  *Id.* at 26:23-24.  Members of the gang committed violent acts in East Harlem for over a decade.  *Id.* at 26:24-25.  The gang worked to control drug sales on its turf, and enforced that control with shootings and violence.  *Id.* at 27:1-2.

One of the Cash Money Boys' rivals was a group called the "Jeff Boys."  David Moore was one of its members.  *Id.* at 27:3-6.  On June 20, 2010, there was a fight between members of the Cash Money Boys and the Jeff Boys.  Mr. Adamson's co-defendant, Hasahn Murray, anticipated that the Jeff Boys would come to retaliate.  *Id.* at 27:8-9.  So Mr. Murray secreted a handgun in a friend's bag.  When a group of Jeff Boys approached, Mr. Adamson took the gun.  *Id.* at 27:12.  He used it to shoot at the approaching Jeff Boys.  He killed Mr. Moore.  *Id.* at 27:13-15.

This was Mr. Adamson's only murder, but it was not his only shooting:  he shot at another rival gang in 2010 and fortunately failed to hit anyone.  *Id.* at 27:21-24.  Mr. Adamson shot at members of yet another rival gang in 2011, after he murdered Mr. Moore, and struck and injured an innocent bystander.  *Id.* at 27:24-28:4.  Mr. Adamson also participated in violent robberies.  *Id.* at 27:19-21; 28:4-7.  One of those robberies took place in 2017; the victim was shot in

the foot by the person with whom Mr. Adamson committed the robbery. And for an extended period, Mr. Adamson sold drugs as a member of the gang. *Id.* at 27:8-10.

Mr. Adamson was born in March 1993. *Id.* 29:2-3. He was a young man when he murdered Mr. Moore—just over 17 years old. He continued his criminal conduct as a member of the Cash Money Boys after he turned 18, including the violent robbery when Mr. Adamson was 24 years old. Mr. Adamson was not arrested for the murder of Mr. Moore until October 10, 2019—over nine years after the murder. He was finally arrested because of his indictment in this case.

### B.    The Initial Indictment and Appointment of Counsel

Mr. Adamson was first indicted on October 1, 2019. Dkt. No. 2 (the "Indictment"). The Indictment charged Mr. Adamson and his co-defendant, Mr. Murray, with two counts. Count One charged both defendants with murder in aid of a racketeering enterprise, in violation of 18 U.S.C. §§ 1959(a)(1) and 2. Count Two charged the defendants with murder through use of a firearm in furtherance of a crime of violence and drug trafficking crime, in violation of 18 U.S.C. §§ 924(j) and 2.

Lisa Scolari, Esq. was appointed as Mr. Adamson's counsel when he was arrested. Dkt. No. 6. Counsel was also appointed for Mr. Murray, Mr. Adamson's co-defendant. David Bertran, Esq. and Jacqueline Cistaro, Esq. both entered appearances on Mr. Murray's behalf.

### C.    The Motion to Dismiss

In December 2019, the Court issued an order scheduling trial and pre-trial proceedings in this case. Dkt. No. 12. Initially, any defense motions were due to be filed on March 6, 2020. *Id.* After the Court granted one extension request by the defendants, on March 22, 2020, counsel for both Mr. Adamson and Mr. Murray jointly filed a motion to dismiss the Indictment. Dkt. No. 20 (notice of motion); Dkt. No. 22 (memorandum of law or "D. Mem."). The defendants' counsel argued that the prosecution was time-barred because 18 U.S.C. § 3282, the five-year general statute

of limitations for non-capital offenses, applied to the case, rather than 18 U.S.C. § 3281, which provides no time limit for capital offenses. *See generally* D. Mem. In their memorandum, counsel acknowledged that existing law—including Second Circuit precedent—did not support the argument. D. Mem. at 2 ("As courts have held, it is the nature of the offense, rather than the possible punishment, that determines the applicability of the longer time period."). But they argued that the Court should dismiss the indictment by developing new law, based on an argument that "the crimes committed by juveniles are not as heinous as those committed by adults" and that "their crimes, including murder, are not as severe as the same crimes committed by adults." D. Mem. at 4.

The Government filed its opposition to the motion to dismiss on April 8, 2020. Dkt. No. 24 ("Opp."). In it, the Government pointed to the governing Second Circuit authority holding that "in determining whether an offense is 'punishable by death' within the meaning of § 3281 . . . we look to the character of the offense and the penalties that are set out by statute." *United States v. Payne*, 591 F.3d 46, 58-59 (2d Cir. 2020). The Government pointed out that the defendants had not identified "a single case in which any court has restricted the applicability of § 3281 based on the unavailability of the death penalty to a particular defendant in a particular case." Opp. at 10.

On April 20, 2020, after the Court granted an extension of time, the defendants filed a reply. Dkt. No. 30. In it, the defendants focused little attention on the Government's arguments regarding the binding precedent that precluded the motion on the grounds upon which it had been presented. However, the defendants' reply suggested an argument that they had chosen not to present in their initial motion—namely that the Eighth Amendment of the United States Constitution barred the application of an unlimited statute of limitations for crimes committed by minors. Counsel noted that the "Constitutionality of applying an unlimited statute of limitations to a minor, is a novel issue." *Id.* at 1. The reply argued that "[t]o hold a juvenile to an unlimited lifetime possibility of prosecution for an impulsive act committed by an unformed psyche is cruel and unusual, and thus

violates the Eighth Amendment to the Constitution." *Id.* at 2. The brief presented no legal support for the concededly "novel" issue.

On April 24, 2020, the Court held a hearing with respect to the motion to dismiss the Indictment. *See* Dkt. No. 35 ("Argument Tr."). The Court permitted the parties the opportunity to advance oral arguments regarding the motion. The Government noted that based on the defendants' reply "it appears . . . that the parties are not disputing the statutory interpretation of Section 3281 and the Second Circuit's clear case law regarding how that should be interpreted." *Id.* at 4:23-5:2.

The Government then took the opportunity to respond to the constitutional argument advanced for the first time in the defendants' reply. The Government's response was based on the fact that the Eighth Amendment "prohibits excessive bail, excessive fines, and cruel and unusual punishments." *Id.* at 5:10-11. Because "a statute of limitations which allows the filing of a charge does not constitute a bail, a fine, or a punishment," the Government argued, it could not violate the Eighth Amendment. *Id.* at 5:11-13. For that reason, the Government found it unsurprising that the defendants had been unable to cite to any decision by any court "that has ever suggested that a statute of limitations could be cruel and unusual or could be excessive within the meaning of the Eighth Amendment." *Id.* at 6:8-11.

The Court gave defense counsel an opportunity to respond. Mr. Adamson's attorney responded as follows:

> Your Honor, not having had the advantage of hearing these arguments before, which I understand are now made in response to our reply, I don't have a response at this time. I think that some of the arguments are absolutely valid, and we need to consider them and potentially address them in the future.

*Id.* at 7:2-7. Mr. Murray's counsel added:

> I think a little bit further research would be warranted. I think we do lay out in our reply the idea that – the idea that a lifetime possibility of prosecution does itself

constitute a punishment, but I'd like a chance to respond in writing if it's permissible with the Court.

*Id.* at 7:10-15. The Court denied that request, commenting:

> No, it's not. I'm going to rule on the motion now. [To] [p]ut it very simply, you should have researched the issue before you presented it. These are the obvious questions that are raised by your arguments. It's shocking to me, frankly, that you didn't consider them at all, as you seem to be suggesting or taking your position.

*Id.* at 7:17-22.

The Court then denied the motion to dismiss in an oral opinion. In its opinion, the Court explained why 18 U.S.C. § 3281, not 18 U.S.C. § 3282, established the statute of limitations for the charges in the Indictment. *Id.* at 11:15-13:12. The Court also addressed at length the constitutional argument raised in the defendants' reply. The Court explained that "there is no case law to support the defendants' arguments because it is unsupportable." *Id.* at 14:11-12. The Court pointed to the text of the Eighth Amendment and quoted the Supreme Court's ruling that: "An examination of the history of the Amendment and the decisions of this court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). "The defendants present no argument to support the expansion of the Eighth Amendment to protect against anxiety about possible prosecution—something that happens by definition before conviction, indeed, before the government takes any action at all. As counsel for the United States pointed out, there's no foundation in the text of the Eighth Amendment for this argument." Argument Tr. at 15:6-12. The Court explained why the cases cited by the defendants' counsel did not support their argument, and detailed the reasons why the defendants' proposed rule—that living with the anxiety of being prosecuted for murder for an extended period was cruel and unusual publishment barred by the Constitution—had no support. *Id.* at 16:22-20:11.

### D.    The Change of Plea Hearing

The case moved forward toward trial against the backdrop of the ongoing COVID-19 pandemic.  The Court granted a request by the defendants to adjourn the trial date in July 2020.  Dkt. No. 44.  On September 10, 2020, the grand jury returned a new superseding indictment against the defendants.  Dkt. No. 45 (the "S1 Indictment").  The superseding indictment added a new charge that the defendants had participated in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), in addition to the previously charged crimes.  As the case moved toward trial, in October 2020, the Court appointed a second attorney to represent Mr. Adamson, Thomas Ambrosio, Esq.  Dkt. No. 50.  From that point on, Mr. Ambrosio represented Mr. Adamson alongside Ms. Scolari.

Trial was ultimately scheduled to begin on November 1, 2021.  Dkt. No. 58.  The parties prepared for trial—filing motions in limine and other pre-trial submissions.  Just days before trial was scheduled to begin, Mr. Adamson decided to accept an agreement to plead guilty.  On October 29, 2021, the Court held a change of plea hearing.

At the hearing, Mr. Adamson was placed under oath.  Dkt. No. 100 ("Plea Tr.") at 3:8-21.  The Court engaged in an extended colloquy with Mr. Adamson to evaluate his competency.  *Id.* at 3:23-8:9.  The Court also confirmed that Mr. Adamson was satisfied with his counsels' representation of him.  *Id.* at 7:14-16.  Mr. Adamson waived his right to indictment and pleaded guilty to a two-count superseding information.  *Id.* at 8:10-13:5.  The superseding information charged Mr. Adamson with two crimes:  first, participation in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and second, participation in a conspiracy to distribute narcotics, in violation of 18 U.S.C. § 371.  Dkt. No. 97 (the "Information").

The Court engaged in a lengthy colloquy with the defendant pursuant to Federal Rule of Criminal Procedure 11.  Plea Tr. 13:7-35:24.  As part of that colloquy, the Court discussed the terms

of Mr. Adamson's plea agreement. In particular, the Court reviewed at length the defendant's waiver of his right to appeal his conviction and his ability to file a habeas petition.[1] *Id.* at 27:25-31:21.

During the course of his colloquy with the Court, Mr. Adamson made plain that he understood his rights, and that he was voluntarily pleading guilty. He affirmed that no one had offered him any inducements to accept the plea other than the agreements in his plea agreement, and that no one had threatened him or forced him to plead guilty or to enter into the plea agreement. *Id.* at 31:12-22.

As the basis for his plea, Mr. Adamson stated the following:

> Between 2006 and 2017, I was a member of the association, in fact, as that's listed in the information. The activities of the group occurred in Manhattan and affected the state commerce. During my participation in the association, I agreed with others that they would sell crack and I would sell marijuana. In 2010, I sold marijuana in Manhattan. In 2010, I acted in concert with another person who shot at rivals of my association in furtherance of the goals of the group that also occurred in Manhattan. I knew what I was doing was wrong.

*Id.* at 32:5-15. The Government proffered additional facts, including information regarding Mr. Adamson's extended period selling drugs as a member of the Cash Money Boys, the murder of Mr. Moore, and another attempted murder. *Id.* at 33:3-21.

The Court accepted Mr. Adamson's plea. In doing so, the Court found "that Mr. Adamson is fully competent and capable of entering an informed plea; that Mr. Adamson is aware of the nature of the charges and the consequences of the plea; and that the plea of guilty is a knowing and

---

[1] Plea Tr. 29:17-31:1 ("THE COURT: "Now, Mr. Adamson, in your plea agreement you've waived a number of rights to appeal your conviction and sentence, or also to attack it through a habeas petition or otherwise. In particular, you've agreed not to file a direct appeal or to bring a collateral challenge, including but not limited to an application under Title 28, U.S.C. Section 2255 or 2241, of any sentence at or below the stipulated guideline sentence of 300 months' imprisonment. . . . Do you understand the rights to appeal or otherwise challenge your conviction and sentence that you have waived? THE DEFENDANT: Yes.").

voluntary plea supported by independent basis-in-fact containing each of the essential elements of the offense." *Id.* at 35:16-21.

### E.    The Sentencing Hearing

The Court conducted Mr. Adamson's sentencing hearing on February 28, 2023, following several extension requests by the defense. The Court sentenced Mr. Adamson to 300 months of imprisonment—the guidelines sentence agreed to by the parties in the defendant's plea agreement. Sentencing Tr. at 36:23-37:4. After the Court imposed sentence, it dismissed all open counts and the underlying indictment on the Government's motion. *Id.* at 41:7-8.

### F.    The Appeal

Mr. Adamson filed a timely notice of appeal on March 1, 2023, just one day after the Court sentenced him. Dkt. No. 143.[2] He continued to be represented by Ms. Scolari and Mr. Ambrosio at that time. *See id.* On March 5, Ms. Scolari moved for her and Mr. Ambrosio to be relieved as Mr. Adamson's counsel on appeal so that he could "raise an ineffective counsel claim on the appeal regarding our representation . . . ." App. Dkt. No. 8.2 ¶ 3.[3] The Second Circuit granted that motion on March 10, 2023 and appointed Georgia J. Hinde to represent Mr. Adamson in the appeal. App. Dkt. No. 10.1.

On August 10, 2023, Mr. Adamson filed his appellate brief. App. Dkt. No. 28.1 ("App. Mem."). Mr. Adamson did not challenge his conviction in his appeal. Instead, Mr. Adamson asked the Second Circuit to "find that his 300-month sentence is greater than necessary and should be reconsidered and reduced" because the Court did not give Mr. Adamson credit for time that he served for other conduct, and because his sentence was relatively greater than that of his co-

---

[2] The signature on the notice of appeal is illegible, but it appears to have been signed by Mr. Adamson's counsel. The notice contained contact information for both of his counsel, the Assistant United States Attorney involved in the case, and attached the docket of the district court proceedings. App. Dkt. No. 1.2.

[3] References to the "App. Dkt. No." are to docket numbers in the appellate proceedings in the Second Circuit Court of Appeals in *U.S. v. Adamson*, 23-6197.

defendant.  *Id.* at 1.  Mr. Adamson asked that the Court of Appeals grant him that relief

notwithstanding the fact that the sentence imposed fit within the scope of the appeal waiver in his

plea agreement.  *Id.* at 2.

 In his appellate brief, Mr. Adamson reviewed at length the Court's plea colloquy with him.

*Id.* at 5-11.  He raised no concerns about the adequacy of the colloquy or about his understanding of

it.  To the contrary, the appellate brief repeatedly described the fact that Mr. Adamson "understood"

the rights that were discussed with him by the Court.  *See, e.g.*, *id.* at 8, 9.  Mr. Adamson did not

contend that he was innocent of the charges or that he did not shoot and kill Mr. Moore.  *See*

*generally* App. Mem.

 On November 9, 2023, the Government moved to dismiss Mr. Adamson's appeal because

of the appeal waiver contained in his plea agreement.  *See* App. Dkt. No. 35.1.  Defense counsel

responded to the Government's motion on November 21, 2023.  App. Dkt. No. 39.1.  In his reply,

Mr. Adamson argued that the appeal waiver should not be enforced because the plea agreement's

waiver was "at least ambiguous" because it omitted any mention of the possibility of time served for

relevant conduct.  *Id.* at 6.

 On March 11, 2024, the Second Circuit granted the Government's motion to dismiss the

appeal.  *See* App. Dkt. No. 42.1.   The court noted that "[o]n appeal, the Appellant makes no

argument that his appeal waiver was invalid."  *Id.* at 1.  "Instead, he argues that his appellate waiver

does not preclude the one claim he raises on appeal, namely that his sentence was substantively

unreasonable in light of the 18 U.S.C. § 3553(a) sentencing factors . . . ."  The court "conclude[d]

that the Appellant's claim [fell] within the scope of the valid waiver" based on the language in his

plea agreement, in which he "waived his right to appeal any 'sentence at or below the stipulated

guidelines sentence of 300 months' imprisonment, regardless of whether 'the term of imprisonment

is imposed to run consecutively or concurrently with the undischarged portion of any other sentence of imprisonment.'"  *Id.* at 1-2.

### G.    Mr. Adamson's 2255 Petition

On June 28, 2024, Mr. Adamson filed a petition to vacate his sentence under 28 U.S.C. § 2255.  Dkt No. 153 ("Mot.").  In his petition, Mr. Adamson argued that his counsel had been ineffective in their representation of him for two reasons: First, "[c]ounsel failed to research the statutes of limitations (allowing juveniles to be charged at any time) within the meaning of the eigth [*sic*] amendment and advised Petitioner to plead guilty despite these significant constitutional concerns."  Mot. at 5.  Second, "Counsel also failed to advise the defandent [*sic*] of the advantages and disadvantages of appealing after sentencing."  *Id.*  Mr. Adamson swore that the content of his petition was true.  *Id.* at 13.  But he provided no more facts to support his petition.

The Court ordered the Government to respond to Mr. Adamson's petition within 60 days, and it did so, filing an opposition on September 10, 2024.  Dkt. No. 155 ("Opp.").  The Government argued that the record did not support Mr. Adamson's arguments for several reasons. First, the Government argued that the record did not support Mr. Adamson's claims.  Mr. Adamson's counsel did, the Government argued, present an argument based on the statute of limitations.  Opp. at 10-11.  The Government contended that Mr. Adamson's counsel's request to file additional briefing on their statute of limitations defense "does not come close to establishing deficient performance"—because the counsel raised their argument in briefing.  *Id.* at 11.  The Government noted Mr. Adamson's failure to present any legal support for the argument raised by his counsel that they failed to advance.  *Id.*  As to Mr. Adamson's argument that his counsel had failed to consult with him regarding his right to appeal, the Government pointed to the fact that Mr. Adamson did file a timely notice of appeal after sentencing.  *Id.*

11

Second, the Government argued that Mr. Adamson could not establish that he had been prejudiced by the allegedly deficient representation of his counsel. That, the Government argued, was because the Court fully considered the defendant's statute of limitations and Eighth Amendment arguments on the merits and rejected them. And because Mr. Adamson did in fact file a timely appeal. *Id.* at 12-13.

On October 9, 2024, Mr. Adamson filed his reply. *See* Dkt. No. 157 ("Reply"). In his reply, Mr. Adamson did not respond to the arguments presented by the Government in its opposition. He provided no additional factual support for the arguments asserted in his original petition.

Instead, Mr. Adamson raised a number of new arguments. First, he argued that his counsel was ineffective because he was protected from prosecution as an adult, as he committed his crime when he was 17 years old. "Charging Jamal as an adult now, under a RICO statute, may be a violation of due process" because he committed the murder when he was a juvenile. Reply at 2.

Second, he argued that his attorneys' representation was deficient because they failed to "litigate that purely local crimes do not fall under RICO's interstate commerce requirement." *Id.* "The RICO Act is meant to address organized crime with an impact on interstate or foreign commerce; the fact that [his] alleged criminal activities were purely local weakens the prosecution's case for using RICO." *Id.* at 3. Mr. Adamson argued that his lawyer should have contended that RICO claims predicated on local offenses alone would violate the Commerce Clause. *Id.* at 3-4.

Third, Mr. Adamson argued for the first time that his plea "was neither knowing nor voluntary, as his attorney failed to inform him of his rights and coerced him into agreeing to statements and a plea deal that he did not fully understand." *Id.* at 5. Mr. Adamson argued that his attorney "with[held] vital information or [provided] inaccurate advice." *Id.* But Mr. Adamson provided no further factual elaboration or support; he did not detail the allegedly "vital" information withheld or the allegedly inaccurate advice provided.

12

Fourth, Mr. Adamson added that "factual evidence supporting his innocence was available but ignored by counsel." *Id.* at 7. However, Mr. Adamson failed to identify what evidence was available. *Id.*

Finally, Mr. Adamson argued that his "case also fits squarely within the catchall provision of § 2255, which allows a court to vacate a sentence when the proceedings involved 'a complete miscarriage of justice' or violation of due process." *Id.*

Mr. Adamson's reply was not supported by any affidavits or other evidence. Unlike his initial petition, the facts in which he swore to be accurate, Mr. Adamson did not swear to the accuracy of any of the statements contained in his Reply.

Because Mr. Adamson had raised new issues in his reply, the Court directed the Government to submit a surreply. Dkt. No. 158. The Government did so on November 14, 2024. *See* Dkt No. 159 ("Surreply"). The Government first observed that "this Court 'is free to disregard argument[s] raised for the first time in reply papers.'" *Id.* at 1 (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)). But it went on to respond to each of Mr. Adamson's new arguments in turn, in the event that the Court were to exercise its discretion to consider them.

First, the Government argued that Mr. Adamson's contention that his conviction and sentence was improper because he was a juvenile at the time that he committed his crime lacked merit. That, the Government argued, was because the Juvenile Delinquency Act did not apply, because Mr. Adamson was charged after he turned twenty-one. "[C]ourts have consistently held that a defendant who is alleged to have committed a crime before his eighteenth birthday may not invoke the protection of the Juvenile Delinquency Act if criminal proceedings begin after the defendant reaches the age of twenty-one." *United States v. Hoo*, 825 F.2d 667, 669-70 (2d Cir. 1987). Moreover, the Government observed that while Mr. Adamson murdered Mr. Moore when Mr. Adamson was 17 years old, Mr. Adamson continued to engage in the criminal conspiracy long after

he became an adult:  he "[pleaded] guilty to charges which encompassed conduct that extended six

years beyond the point he reached the age of majority."  Surreply at 1-2.

Second, the Government responded that "the defendant's Commerce Clause argument

misapprehends the interstate nexus requirement of RICO."  *Id.* at 3.  RICO requires that the

enterprise—not necessarily each predicate criminal act—affect commerce.  Here, the Government

argued, the enterprise affected commerce because it engaged in narcotics trafficking.  Thus, the

Government pointed out, the Second Circuit has firmly rejected Mr. Adamson's argument:  *See*

*United States v. Miller*, 116.3d 641, 674 (2d Cir. 1997) ("It follows that where, as here, the RICO

enterprise's business is narcotics trafficking, that enterprise must be viewed as substantially affecting

interstate commerce, even if individual predicate acts occur solely within a state.").

Third, the Government pointed out the lack of factual support for Mr. Adamson's argument

that he had been coerced to accept his plea.  The Government reviewed the comprehensive plea

colloquy that led to Mr. Adamson's plea.  And the Government noted the lack of factual evidence

supporting the new argument.

And finally, the Government argued that Mr. Adamson's argument regarding his actual

innocence was meritless.  The Government pointed to the complete lack of any evidence supporting

Mr. Adamson's statement that he was innocent of the offense.

## III.   LEGAL STANDARD

### A.   Standard of Relief Pursuant to 28 U.S.C. § 2255

Mr. Adamson's right to collateral relief is governed by 28 U.S.C. § 2255, which provides:  "A

prisoner in custody under sentence of a court established by Act of Congress claiming the right to

be released upon the ground that the sentence was imposed in violation of the Constitution or laws

of the United States, or that the court was without jurisdiction to impose such sentence, or that the

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  Although § 2255, by its terms, provides grounds for attacking "the sentence," the term "sentence" has been interpreted as a generic term encompassing all of the proceedings leading up to the sentence, including the conviction.  *See, e.g., Hall v. United States*, 58 F.4th 55, 58 (2d Cir. 2023) (vacating a conviction under § 2255).

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995), *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162 (2002). "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Frady*, 456 U.S. 152, 165 (1982).  Even constitutional errors will not be redressed through a § 2255 petition unless they have had a "substantial and injurious effect" that results in "actual prejudice" to the petitioner.  *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637 (1993) (citations omitted); *Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht*'s harmless-error standard to a § 2255 petition).

Section 2255 "may not be used as a substitute for direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (citing *Frady*, 456 U.S. at 165).  Thus, "[i]n general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (citation omitted).  That rule does not generally apply, however, to claims of ineffective assistance of counsel.  *See Mui v. United States*,

614 F.3d 50, 54 (2d Cir. 2010) ("[A] petitioner may bring an ineffective assistance of counsel claim [in a § 2255 motion] whether or not the petitioner could have raised the claim on direct appeal." (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003))).

Because Mr. Adamson is proceeding *pro se*, the Court must construe each of his submissions in support of the motion "liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

### B.    When an Evidentiary Hearing is Required

Pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, if a § 2255 motion is not dismissed on preliminary review, the "judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Section 2255(b) requires a district court to hold an evidentiary hearing on a petitioner's claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also McLean v. United States*, No. 08-CR-789 (RJS), 2016 WL 3910664, at *8 (S.D.N.Y. July 13, 2016) ("[A] hearing is not required 'where the allegations are insufficient in law, undisputed, immaterial, vague, palpably false or patently frivolous.'" (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970))).

"To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (citations omitted). "Airy generalities, conclusory assertions and hearsay statements will not suffice . . ." *Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987)). Nor will allegations that are "vague, conclusory, or palpably incredible." *Gonzalez*, 722 F.3d at 130. As the Second Circuit has explained:

> The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: e.g., an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. The Court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief. If material facts are in dispute, a hearing should usually be held, and relevant findings of fact made.

*Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal citations omitted). However, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Id.* at 214.

## IV.    DISCUSSION

### A.    Claim of Ineffective Assistance of Counsel[4]

Mr. Adamson's motion does not come close to meeting the standard required to show that his counsel was ineffective. It is well established that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the familiar two-part test for determining whether an attorney's representation was ineffective.

First, the defendant must demonstrate that the representation "fell below an objective standard of reasonableness." *Id.* at 688. Under this first prong of *Strickland*, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The court examines the reasonableness of

---

[4] Because Mr. Adamson is proceeding *pro se*, the Court has elected to review the additional arguments raised in his reply brief. The Court directed that the Government respond to those arguments. *See Brooking v. Gem. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) ("We doubt that district courts lack all discretion to consider arguments raised for the first time in reply briefs—especially when, as here, they order additional briefing on the argument pressed in the reply.").

counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

Second, the defendant must demonstrate that the deficient representation prejudiced him. *Id.* at 694. The prejudice component of *Strickland* asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697. To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a plausible claim of ineffective assistance of counsel, not that "he will necessarily succeed on the claim." *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993)).

### i. Counsels' Decision Not to Pursue Meritless Arguments Did Not Constitute Ineffective Assistance of Counsel

Mr. Adamson's counsel's decision not to pursue the flurry of meritless arguments advanced by Mr. Adamson in his habeas petition does not support a finding that his counsel were ineffective. "The Supreme Court long ago made clear that the Sixth Amendment does not require counsel to raise every non-frivolous argument a client requests." *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017). "It is the very function of an effective legal counselor to select among the available arguments and raise only the most promising issues for review." *Id.* (internal quotations omitted).

"Nevertheless, failure to raise an argument may, in some instances, constitute deficient performance." *Id.* "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted *significant and obvious* issues while pursuing issues that were clearly and significantly weaker." *Id.* (internal quotations and citation omitted) (emphasis in original). But "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999), *overruled on other grounds by Scheidler v. National Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003).

As outlined above, Mr. Adamson presented arguments in his reply brief that his counsel were ineffective because they failed to present arguments regarding the legality of his prosecution as an adult and regarding whether his RICO charge was permitted by the Commerce Clause of the United States Constitution. Both of these arguments were directly foreclosed by controlling precedent. *See, e.g.*, *United States v. Hoo*, 825 F.2d 667, 669-70 (2d Cir. 1987); *United States v. Miller*, 116 F.3d 641, 674 (2d Cir. 1997). The decision by Mr. Adamson's counsel not to pursue these meritless arguments does not amount to ineffective assistance.

### ii. Counsel's Statute of Limitations Motion Did Not Constitute Ineffective Assistance of Counsel

Mr. Adamson's counsel's motion to dismiss his indictment on the basis of the statute of limitations was not ineffective. As described above in detail, Mr. Adamson's counsel advanced a motion to dismiss the indictment, arguing that Mr. Adamson's claim was untimely because 18 U.S.C. § 3282, the five-year general statute of limitations for non-capital offenses, applied to the case, rather than 18 U.S.C. § 3281, which provides no time limit for capital offenses. In their reply brief, counsel also suggested a novel argument that it was cruel and unusual punishment—barred by the Eighth Amendment—to have Mr. Adamson live in fear of a criminal prosecution for an extended period because he had committed the murder before he turned 18 years old. Counsel did not fail to advance these arguments—they did so, notwithstanding their lack of merit.

Mr. Adamson seeks to find fault in his lawyer's conduct because she did not conduct more research regarding the defendants' novel Eighth Amendment argument. Mr. Adamson is likely motivated by the Court's comment to Mr. Murray's counsel during the oral argument: "[To] [p]ut it very simply, you should have researched the issue before you presented it. These are the obvious questions that are raised by your arguments." Argument Tr. at 7:17-22. Mr. Adamson may misunderstand the point of the Court's comment. The Court was not suggesting that it believed that with further research, Mr. Murray's (or Mr. Adamson's) counsel would have been able to develop a better argument. Instead, the Court was pointing out that further research would have revealed to counsel the fundamental reasons why the argument was meritless, as described by the Government in their oral argument.[5]

Moreover, even if his counsel's conduct had been deficient because she failed to research more deeply whether the Eighth Amendment made it illegal for Mr. Adamson to live under the shadow of a potential prosecution for murder, he was not prejudiced by the deficiency. The Court anticipated the arguments raised by the Government during the oral argument and squarely addressed the merits of the defendants' argument when it ruled on the motion to dismiss. The Court denied the motion to the extent it was premised on the Eighth Amendment because the argument was unsupported by caselaw or the text of the Constitution. *Id.* at 9:18-21. As a result, even if Mr. Adamson's counsel had spent more time researching the novel issue presented in their reply brief, they would not have found "support for the position that anxiety about the possibility of

---

[5] Mr. Murray's counsel asked for leave to file supplemental briefing regarding his novel constitutional argument, but Mr. Adamson's did not. Instead, Mr. Adamson's counsel responded to the Government's argument as follows: "I think that some of the arguments are absolutely valid, and we need to consider them and *potentially* address them *in the future.*" Argument Tr. at 7:2-7 (emphasis added). Mr. Adamson's counsel's recognition of the validity of the Government's response to the defendants' novel constitutional argument and her decision not to attempt to pursue the argument further at the time was not unreasonable, given its lack of merit.

being prosecuted is anything akin to the death penalty." *Id.* at 17:21-23. As a result, Mr. Adamson was not prejudiced.

### iii. Counsel's Filing of Timely Notice of Appeal Precludes Finding of Ineffective Assistance of Counsel

Mr. Adamson was not prejudiced by his counsel's asserted failure to advise Mr. Adamson "of the advantages and disadvantages of appealing after sentencing." Mot. at 5. Even if Mr. Adamson's trial counsel failed to advise him in that way, he suffered no prejudice because he filed a timely notice of appeal and was represented by new, independent counsel for the appeal. As described above, Mr. Adamson's counsel filed a notice of appeal on Mr. Adamson's behalf the day after the Court entered judgment. The Second Circuit appointed new counsel to represent Mr. Adamson in the appeal. Because Mr. Adamson did in fact file an appeal, and had independent counsel to advise him regarding the content of his appeal, there is no possible prejudice as a result of the asserted failure by his trial counsel to advise him of the potential advantages and disadvantages of appealing.

### iv. Conclusory, Unsupported Assertion Regarding Coercion Does Not Support a Finding of Ineffective Assistance of Counsel

Mr. Adamson's conclusory assertion that he was coerced to enter his plea deal because his attorney did not properly advise him does not adequately support a claim for ineffective assistance of counsel. In his reply brief, Mr. Adamson states that his plea "was neither knowing nor voluntary, as his attorney failed to inform him of his rights and coerced him into agreeing to statements and a plea deal that he did not fully understand." Reply at 5. That statement was not made under oath; as a result, Mr. Adamson has not presented any competent evidence to support his argument. Moreover, the statement is wholly conclusory: Mr. Adamson has provided no facts to enhance his conclusory assertion. As a result, Mr. Adamson is not entitled to an evidentiary hearing regarding his assertion. *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (citations omitted) ("To

warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief.").

In assessing Mr. Adamson's conclusory assertion that his counsel's performance was deficient in advising him about the consequences of his plea, the Court is "entitled to rely upon the defendant's sworn statements, made in open court." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001). "Any allegations a defendant makes in a § 2255 petition 'cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'" *Hsu v. United States*, 954 F. Supp. 2d 215, 221 (quoting *Hernandez*, 242 F.3d at 112–13). The Supreme Court has long held that "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citing *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962)). The Second Circuit has thus made clear that testimony in a plea allocution carries "a strong presumption of accuracy" and district courts do not, "absent a substantial reason to find otherwise, abuse [their] discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made" or rejected. *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001); *see also Mejia v. United States*, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) ("A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth."); *Hernandez*, 242 F.3d at 114 (holding that "petitioner] fails on the merits [of his § 2255 petition] because his factual assertions regarding his counsel's alleged ineffectiveness simply contradict his sworn statements at the plea allocution.").

The record of Mr. Adamson's sworn statements to the Court during his plea colloquy establish that he was fully advised of his rights by his counsel and that he was not coerced into

agreeing to his plea. *See, e.g.*, Plea Tr. at 7:6-16 ("THE COURT:  Have you had enough of a chance to discuss with your lawyer the case in general, and in particular the charges to which you intend to plead guilty and any possible defenses to those charges?  THE DEFENDANT:  Yes.  THE COURT:  Has your lawyer explained to you the consequences of entering a plea of guilty?  THE DEFENDANT:  Yes.  THE COURT:  Are you fully satisfied with your lawyers' representation of you?  THE DEFENDANT: Yes."); *Id.* at 28:17-31:18 ("THE COURT:  Did you fully understand the [plea] agreement before you signed it?  THE DEFENDANT:  Yes. . . .  THE COURT:  Mr. Adamson, other than what's written in this agreement, has anyone made any promise to you or offered you any inducement to plead guilty or to sign this agreement?  THE DEFENDANT:  No. THE COURT:  Has anyone threatened you or forced you to plead guilty or to sign this agreement? THE DEFENDANT:  No.").  And, as described above, in his appellate brief, Mr. Adamson did not challenge the voluntariness of his plea, and instead, expressly asserted that he understood the rights that he waived during his plea colloquy.  In the face of this clear record, Mr. Adamson's presentation of "conclusory allegations unsupported by specifics is subject to summary dismissal . . . ." *Blackledge*, 431 U.S. at 74.

### B.    Actual Innocence

Mr. Adamson has not presented a credible or compelling claim of actual innocence.  "A claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell,* 547 U.S. 521, 538 (2006)).  A credible claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).  "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not

any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).  Mr. Adamson has presented no evidence of his innocence in support of his claim.  As a result, his petition falls well short of the burden required to establish his actual innocence.

For the same reasons, Mr. Adamson's conclusory contention that his counsel was deficient as a result of an alleged failure to investigate his actual innocence lacks merit.  The duty to investigate requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Where there is "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.*  Defense counsel's duty to investigate does not compel them "to investigate comprehensively every lead or possible defense[.]" *Greiner*, 417 F.3d at 321 (internal quotation marks and citations omitted).  Mr. Adamson has not presented any evidence to support the conclusion that he was actually innocent of the charges against him.  Therefore, Mr. Adamson's petition does not establish that his counsel's choice not to investigate Mr. Adamson's actual innocence was unreasonable.  That is because nothing in Mr. Adamson's petition suggests that such an investigation would have been fruitful.

## V.    CONCLUSION

For the reasons stated above, Mr. Adamson's petition is denied.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  Mr. Adamson has not made a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 153 in *United States v. Jamal Adamson,* 1:19-cr-702-GHW.  The Clerk of Court is further directed to enter judgment for the Respondent and to close Mr. Adamson's civil action, *Jamal Adamson v. United States*, Case No.

1:24-cv-5235-GHW.  Finally, the Clerk of Court is directed to mail a copy of this opinion to Mr.

Adamson.

　　SO ORDERED.

Dated: September 4, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge